# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| The Estate of Shyuan Hsia, by and through Lynn Chao, Executrix and Personal Representative of the Estate of Shyuan Hsia, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. N25C-04-270 FJJ |
| KAPG Hockessin Senior Housing Opco, LLC, d/b/a The Summit, Hockessin Senior Housing I, et al., | ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) ) | |
| Kevin Kelly, Thomas Terranova, Timothy Terranova, et al., | ) ) ) | |
| Third-Party Defendants. | ) | |

Submitted: May 19, 2026
Decided: May 26, 2026

## OPINION AND ORDER
*On Defendants Timothy and Thomas Terranovas'*
*Motion for Fees and Costs*

## GRANTED in part; DENIED in part.

*Timothy A. Dillon, Esquire,* McCann, Dillon, Jaffee & Lamb, LLC, Wilmington, Delaware, *Attorney for Plaintiff.*

*Don Gouge, Esquire*, Wilmington, Delaware, *Attorney for Third-Party Defendant Kevin Kelly.*

*Kevin Buttery, Esquire*, Wilmington, Delaware, *Attorney for Defendant KAPG Hockessin Senior Housing OPC, LLC.*

*Randall S. MacTough, Esquire and Colleen Shields, Esquire*, Eckert Seamans Cherin & Mellott, LLC, *Attorneys for Third-Party Dr. Carolyn Ianni.*

*Maria Granaudo, Esquire*, Burns and White, Wilmington, Delaware, *Attorney for Third-Party Defendant Dr. Jennifer Christian.*

*Jennifer Sutton, Esquire*, O'Hagan Meyer, Wilmington, Delaware, *Attorney for Defendant American Trust Senior Care, LLC, Virginia Gray, Hockessin Senior Housing I.*

*Robert M. Greenberg, Esquire*, Tybout, Redfearn & Pell, Wilmington, Delaware, *Attorney for Third-Party Defendant Timothy Terranova.*

*Maura L. Burke, Esquire and Carl Neff, Esquire*, Pierson Ferdinand, LLP, Wilmington, Delaware, *Attorneys for Defendant Discovery Senior Living, LLC.*

*John D. Balaguer, Esquire and Claire McCudden, Esquire,* Balaguer, Milewski & Imbrogno, Wilmington, Delaware, *Attorneys for Third-Party Defendants Thomas Terranova and Timothy M. Terranova.*

**Jones, J.**

This matter arises from the fatal assault of Shyuan Hsia ("Hsia") by Kevin Kelly ("Kelly") while Hsia was under the care of KAPG Hockessin Senior Housing OPCO, LLC D/B/A The Summit (hereinafter referred to as "Summit"). Summit is a licensed Assisted Living Facility that operates the Shine Memory Care Unit ("MCU") to care for residents with Alzheimer's, dementia or other mental/memory impairments. Kelly and Hsia were residents in Summit's MCU. It is alleged that on August 5, 2024, while both were under the care of Summit, Kelly, who suffers from dementia, entered Hsia's private room and assaulted her, leading to her death. Hsia's estate and beneficiaries filed suit against Summit alleging that Summit's negligence caused her death.

Timothy Terranova and Thomas Terranova are each the nephew and power of attorney for Kelly. Timothy has power of attorney over medical decisions under Delaware Code Title 16 Chapter 25, and both Timothy and Thomas have durable personal power of attorney under Delaware Code Title 12, Chapter 49A.

Summit filed an original third-party complaint against a number of defendants, including Timothy and Thomas.[1] In its original third-party complaint, Summit alleged that as POAs for Kelly, Timothy and Thomas, "were responsible for making decisions necessary for Kevin Kelly's health and wellbeing, as well as arranging for and facilitating his personal and health care services not provided by

---

[1] Docket Item ("D.I.") 16.

the Summit."[2]  Summit contended that Timothy and Thomas failed to fulfill these duties while Kelly was a resident at Summit by poorly managing his medication regiment in light of advancing mental deterioration and concerns of aggressive behavior.  Summit claims that Timothy and Thomas were negligent in their capacity as POAs which resulted in Kelly's assault of Hsia and the subsequent injuries and death for which plaintiffs allege damage in the underlying complaint. Summit sought contribution and/or indemnification from Timothy and Thomas.

Timothy and Thomas filed a motion for judgment on the pleadings.[3]  The argument advanced by Timothy and Thomas was that they owed no duty to Summit or Hsia and, as such, a claim based on negligence was not proper.  At the February 20, 2026 oral argument on the motion for judgment on the pleadings, Summit conceded that there was no legal authority to support an argument that Timothy or Thomas owed a duty to either Summit or Hsia.  Summit requested that the Court grant them leave to file an amended third-party complaint.  Summit filed its motion to file an amended third-party complaint and attached to the motion the proposed amended third-party complaint.[4]  The proposed amended complaint reasserted the original allegations and added allegations based on fraud by Timothy and Thomas. Timothy and Thomas opposed the motion.[5]  On March 24,

---

[2] *Id.* at ¶12.
[3] D.I. 92.
[4] D.I. 157.
[5] D.I. 164.

4

2026, this Court issued a written opinion and order denying Summit's motion to amend as futile and granting the Terranovas' motion for judgment on the pleadings.[6]  The Court ruled that Summit's negligence claim failed because the Terranova brothers owed no legal duty to Summit.  As to the fraud claim, the Court found that Summit merely alleged a sense that there was information being withheld by the Terranova brothers, but this sense was nothing more than a bare allegation stated without the necessary particularly or element of reliance.  The Court concluded that Summit could not establish the reliance element of fraud for two reasons: 1) Kelly had been in Summit's care for almost a year prior to the deadly assault; and 2) Summit was aware that three weeks before the alleged attack on the decedent Kelly had attacked another resident while he was a resident at Summit,  and Summit was aware of this incident before the attack in question.

The Terranovas' have requested that this Court award them attorney's fees and costs maintaining that Summit's third-party filing amounted to filing and pursuing a frivolous claim which would justify such an award.[7]  Summit opposes the motion.[8]

Delaware follows the American Rule as to the award of attorneys fees.[9]  Generally, the American Rule states that parties must cover their own litigation

---

[6] D.I. 176.
[7] D.I. 206.
[8] D.I. 216.
[9] *In re Delaware Public Schools Litigation,* 312 A.3d 703, 715 (Del. 2024).

costs. However, there are a few exceptions to the rule. One such exception is the "Bad Faith Exception,"[10] which has been recognized by both the US Supreme Court[11] and Delaware Courts. The Chancery Court in *Beck v. Atlantic Coast PLC* provided a general outline of the exception:

> The bad faith exception to the American Rule applies in cases where the court finds litigation to have been brought in bad faith or finds that a party conducted the litigation process itself in bad faith, thereby unjustifiably increasing the costs of litigation. *There is no single standard of bad faith that warrants an award of attorneys' fees in such situations; rather, bad faith is assessed on the basis of the facts presented in the case. Courts have found bad faith conduct where parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims.* Specific behavior that has been found to constitute bad faith in litigation includes misleading the court, altering testimony, or changing position on an issue. *The bad faith exception is not lightly invoked. The party seeking a fee award bears the stringent evidentiary burden of producing "clear evidence" of bad-faith conduct.*[12]

"[T]he bad faith exception applies only in extraordinary cases, and the party seeking to invoke that exception must demonstrate by clear evidence that the party from whom fees are sought ... acted in subjective bad faith."[13] "Although there is no single definition of bad faith conduct, courts have found bad faith where parties

---

[10] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998).

[11] *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 419, 422 (1978).

[12] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 850–51 (Del. Ch. 2005) (citations omitted) (emphasis added).

[13] *Lawson v. State*, 91 A.3d 544, 552 (Del. 2014) (quoting *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1093 (Del. 2006)) (also quoting *Auriga Capital Corp. v. Gatz Properties, LLC*, 40 A.3d 839, 880 (Del.Ch.2012), *aff'd*, 59 A.3d 1206 (Del. 2012)) (internal quotation marks omitted).

have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."[14] "Bad faith conduct also can include reversing position on issues and changing testimony to suit the moment."[15] However, "the bad faith exception does not apply to conduct that gives rise to the substantive claim itself."[16] "Accordingly, 'an award of fees for bad faith conduct must derive from either the commencement of an action in bad faith or bad faith conduct taken during litigation, and not from conduct that gave rise to the underlying cause of action.'"[17] "The purpose of [the] bad faith exception is to deter abusive litigation in the future, thereby avoiding harassment and protecting the integrity of the judicial process."[18]

Whether the bad faith exception applies in this case turns on whether Summit knowingly asserted a frivolous claim. Once the Terranovas filed their motion for judgment on the pleadings, it was incumbent on Summit to squarely and truthfully address the question of whether the Terranovas owed a duty to Summit. In its response to the original motion for judgment on the pleadings Summit did not address the duty argument made by the Terranovas. At oral

---

[14] *Johnston v. Arbitrium*, 720 A.2d at 546 (multiple citations omitted).

[15] *In re Rural Metro Corp.*, 88 A.3d 54, 109 (Del. Ch.), decision clarified on denial of reargument sub nom. *In re Rural Metro Corp. S'holders Litig.* (Del. Ch. 2014) (quoting *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 78 (Del. Ch. 2013)) (internal quotation marks omitted).

[16] *Johnston v. Arbitrium*, 720 A.2d at 546 (citing *Shimman v. International Union of Operating Engineers Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1984), *cert. denied* 469 U.S. 1215).

[17] *Versata Enters., Inc. v. Selectica, Inc.*, 5 A.3d 586, 607 (Del. 2010) (citing *Johnston v. Arbitrium*, 720 A.2d at 546).

[18] *In re Rural*, 88 A.3d at 109 (quoting *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005)) (internal quotation marks omitted).

argument on the motion, Summit admitted to the Court that they could find no legal authority for the proposition that the Terranovas' owed a legal duty to Summit. Rather than conceding that no claim existed against the Terranovas, Summit sought leave to file an amended complaint to add a claim based on fraud. The proposed fraud claim was ultimately dismissed because there was no factual or legal basis for the claim. In fact, the claim was made when Summit knew that Kelly had assaulted another resident of Summit while he was in the care and custody of Summit, and this assault occurred a mere three weeks prior to the attack in the instant case. Additionally, this assault occurred almost a year after Kelly had been at Summit.

On this record the Terranovas have met their high burden in demonstrating that this is one of those extraordinary cases justifying a shifting of fees. I find the Terranovas are entitled to an award of attorney's fees against Summit for all fees incurred after the filing of the original motion for judgment of the pleadings. It was at this point that it must have been clear to Summit that its third-party complaint had no basis in either law or fact. The Terranova brothers, through counsel, warned Summit's counsel that it would seek attorney's fees and costs if Summit did not dismiss or withdraw the third-party complaint against them.[19]

---

[19] The Terranovas also seek the imposition of fees under Superior Court Civil Rule 11. Rule 11 requires that the Motion be served upon the opposing party at least 21 days before it is filed and served with the Court. While there was notice to Summit by the Terranovas about filing a Rule 11 motion, the Rule 11 motion was not sent 21

Summit failed to head the Terranovas' request and proceeded with the filing of the amended third-party complaint which doubled down on their original complaint.

I am not persuaded that the Terranovas are entitled to fees before the filing of the motion for judgment on the pleadings. Up until that point, the Terranovas have not presented sufficient clear and convincing evidence that Summit was acting subjectively in bad faith.

Within 10 days of the date of this order the Terranovas should file and advise the Court of the amount of fees to which they are entitled based on this decision. The Terranovas, without violating any privilege, should provide more details for the time being sought.

The Terranovas are the prevailing party. As such, they are entitled to ordinary court costs. The Terranovas have attached to their motion a listing of costs they are seeking to recover. I will award the items listed as filing fees and process server fees. I need a further explanation as to the other charges, especially the court reporter fees, as to whether they are recoverable. Within 10 days of the date of this decision the Terranovas should provide the Court with a more detailed explanation of the Court reporter fees, including an identification of the transcript involved, the deponent and the date of the proceeding being transcribed. The

---

days in advance as required by the rules. Even if the Terranovas had complied with Rule 11, any relief under Rule 11 would be duplicative of the relief I have fashioned under the bad faith exception.

Court will analyze the award of these costs as it normally does when costs are being requested for transcript fees post-trial.

**IT IS SO ORDERED**.

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

cc:   *Counsel via File & ServeXpress*